IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| H.M.T., by and through her parents and next friends, Ce.T. and Ma.T, | ) ) ) |
| Plaintiffs, | ) Case No. 3:22-cv-00402 ) |
| v. | ) Judge William L. Campbell ) Magistrate Judge Alistair E. Newbern |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) ) ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff H.M.T. ("Plaintiff" or "H.M.T."), by and through her parents Ce.T., and Ma.T. (the "Parents") and by and through undersigned counsel, hereby responds to Defendant Metropolitan Government of Nashville and Davidson County ("Defendant" or "MNPS") Motion to Dismiss.

### INTRODUCTION

This case arises from a horrifying incident wherein H.M.T., then a third grader at Sylvan Paideia Elementary School (the "School"), was virtually sexually harassed by a first-grade boy (the "Boy") using MNPS-provided email addresses. *See generally* Complaint. Albeit initially innocent, these communications soon took a dark turn. *Id.* On May 4, 2021, the Parents noticed that the Boy had sent H.M.T. 15 emails over the course of that day. *Id.* at ¶ 11. These emails included several very explicit photographs of his erect penis, a video of him using the bathroom,

and several demands from him to see photographs of her nude. *Id.* The Parents then researched further and found that similar communication had been sent from the Boy on April 25 and May 1, 2021. *Id.* at ¶ 12. The Parents immediately informed the School, and the Assistant Principal opened a case with the Department of Children's Services ("DCS"), contacted the Metro Nashville Police Department ("MNPD"), and addressed the issue with the Boy's parents. *Id.* at ¶ 13-14. MNPS refused, however, to implement simple and low-cost safety precautions to prevent such harassment from recurring. *See generally id.*

Due to MNPS's failure to remedy its students' online vulnerability, the Parents unenrolled H.M.T. from the School. *Id.* at ¶ 20. H.M.T. has since been studying part-time at a Montessori school and being home-schooled. *Id.* at ¶ 21. This has caused significant challenges for H.M.T., who has suffered from anxiety and loneliness from changing schools, missing her friends, and the trauma suffered during her third-grade year. *Id.* at ¶ 22. Meanwhile, the Parents have struggled financially and logistically by having to work full-time along with homeschooling their daughter. *Id.* at ¶ 23.

## STANDARD OF REVIEW

The Court is well aware of the standard for review on a Motion to Dismiss, which is also correctly cited by MNPS. Suffice it to say that there is a high bar for MNPS to obtain dismissal at this initial stage, thereby depriving Plaintiff of an opportunity to conduct discovery and prosecute a case that is incredibly important for the safety of Plaintiff and all children at MNPS. Plaintiff's claims should not be dismissed, certainly not at this initial stage.[1]

---

[1] Given the law cited by MNPS on Plaintiff's negligence claims, Plaintiff intends to voluntarily dismiss such claims. Plaintiff's claims under 20 U.S.C. § 1681 and 42 U.S.C. § 1983 have merit and should not be dismissed.

## ARGUMENT

### A. Plaintiff Has Pleaded Sufficient Facts to State a Plausible Claim Under Title IX.

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Here, that is exactly what has happened: H.M.T. has been denied the benefits of MNPS's education programs due to MNPS's refusal to take measures to prevent further sexual harassment to H.M.T or any other student. Defendant cites almost thirty cases in its brief in an attempt to convince the Court that MNPS fulfilled its duties to its student simply by making a few phone calls and having a few discussions. The facts of the cases cited by Defendant are all distinguishable from the facts of the case at hand. For example, none of the cases relied upon by Defendant addressing causes of action under Title IX and 42 U.S.C. § 1983 involved students communicating through technology provided by the school, which can and should be filtered and/or screened through simple software.

Defendant primarily cites *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019) as its main source of defense. *Kollaritsch* requires a Title IX claim for peer-on-peer sexual harassment to meet two components: 1) there must be actionable harassment by a student, and 2) there must be a deliberate-indifference intentional tort by the school. *Kollaritsch* at 619-20. While Defendant agrees that there is an actionable harassment by a student, Defendant disagrees that the school was deliberately indifferent. Specifically, *Kollaritsch* requires that, under the deliberate indifferent standard, a plaintiff must plead knowledge, an act, injury, and causation. *Id.* at 621. Using *Kollaritsch*, Defendant claims Plaintiff failed to plead "an act" and "causation."

### i. Plaintiff Has Pleaded an "Act."

Defendant claims that according to *Kollaritsch*, Plaintiff must allege that the School's response to actual knowledge of the sexual harassment was "clearly unreasonable in light of the known circumstances." *Id.* at 621. Defendant falsely asserts that Plaintiff did not meet this standard. Plaintiff does not deny that the School opened a case with DCS, contacted MNPD, and addressed the issue with the Boy's parents. However, this is simply not enough. The internet is more prevalent in children's lives now than ever before. This is accompanied by a rise in online threats; it is frighteningly easy for online predators to prey upon unassuming children. Accordingly, safety measures must increase in tandem to combat the danger.

However, the only protection MNPS has in place is through firewalls that prevent students from visiting certain websites. *See* Complaint at ¶ 16. While this measure is helpful to prevent students from visiting inappropriate websites, it does not prevent schoolchildren from harming each other, as in this case. Here, neither H.M.T. nor the Boy attempted to visit inappropriate websites. Instead, the Boy sent H.M.T. inappropriate sexual content through MNPS servers and asked for the same in return. Mere firewalls are insufficient to prevent such behavior from recurring and harming children through the use of technology provided by MNPS.

Other school districts *in Tennessee* have implemented protection for its students from such harmful and foreseeable behavior. For example, upon information and belief, Williamson County uses Gaggle to protect its students. *Id.* at ¶ 18. Gaggle is one of several different types of software available to identify pornographic images in emails; others include OpenNSFW, TensorFlow, and Nude.js. *Id.* The Parents provided this research and this option to MNPS, but they were rebuffed. MNPS did not provide a reason for not implementing such software; they simply rejected the Parents' request. This leaves not only H.M.T. but also other MNPS students vulnerable to similar

online attacks. There is no excuse for such inaction when other school districts, even neighboring districts such as Williamson County, have taken measures to protect their students from the harm that can be inflicted by other students using school provided technology.

### ii.     Plaintiff Has Pled "Causation."

Next, Defendant claims that Plaintiff failed to plead causation, for which Plaintiff must allege that her Title IX injury is "attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response." *Kollaritsch* at 622. This standard is inapplicable here for several reasons. First, the only decision of the United States Supreme Court on issues surrounding student-on-student harassment is *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), which provides:

> [A] private damages action may lie against the school board in cases of student-on-student harassment. We conclude that it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities. Moreover, we conclude that such an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.

*Davis* at 633. This means that once a school is alerted to the sexual harassment, it may be liable if it acts with "deliberate indifference" to the first, or series of first acts of harassment, prior to intervention, rather than just to those that occur post-knowledge.

Moreover, H.M.T. should not be punished for a lack of further harassment because the Parents took active measures to protect their child when MNPS failed to do the same. The Parents unenrolled H.M.T. from MNPS as soon as MNPS refused to implement safety measures. *See* Complaint at ¶ 20. Applying the *Kollaritsch* standard here, where there was no way for further harassment to occur, would be akin to punishing the Parents for ensuring the safety and wellbeing of their child. There is no guarantee that further harassment would not occur if H.M.T. had

continued studying at the School; the Parents merely chose not to risk finding out at the expense of their child's mental health.

A recent case, *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 35 F.4th 459, 468 (6th Cir. 2022), disagrees with the post-actual-knowledge further harassment mandated by *Kollaritsch*. During discovery in *Doe*, the plaintiffs "requested disciplinary records across MNPS schools from 2012 to 2016 related to sexual misconduct, resulting in documentation of over 950 instances of sexual harassment, over 1200 instances of inappropriate sexual behavior, 45 instances of sexual assault, and 218 instances of inappropriate sexual contact." *Id.* at 464 (internal quotations and citations omitted). The records showed that students in many of those instances took and/or distributed sexually explicit photographs or videos of themselves or other students. *Id.* Despite the startling frequency of these incidents, the Title IX coordinator was not involved in any of them, as required by the Department of Education (*see* 45 C.F.R. § 83.15(a)); instead, an untrained principal reviewed each case individually and decided whether or not there was a Title IX violation. *Id.*

This is almost exactly what happened here, only with one notable difference. In *Doe*, the plaintiffs were videotaped by students on the school campus using their own technology. Here, an MNPS student *using MNPS-provided technology* distributed nude photographs of himself and asked for nude photographs of H.M.T. Upon notice, as in *Doe*, the School did not involve a Title IX coordinator, but instead the untrained Assistant Principal reviewed the case individually. "Extending *Kollaritsch*'s same-victim requirement to Title IX 'before' claims like those here would thwart that purpose as it would allow schools to remain deliberately indifferent to widespread discrimination as long as the same student was not harassed twice." *Id.* at 465.

6

The Court in *Doe* further analyzes how its decision parallels *Kollaritsch*'s overall logic through *Kollaritsch*'s interpretation of *Davis*. Specifically, *Doe* states, "In *Davis*, the Supreme Court held that in a student-on-student harassment claim under Title IX, the school's "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Doe* at 465 (quoting *Davis* at 645 (internal quotations omitted)). *Kollaritsch* uses *Davis* to say a student must allege that post-notice harassment occurred to satisfy causation under Title IX because the "the *Davis* formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable harassment of the student-victim." *Kollaritsch* at 620, 623-24.

However, the plaintiffs in *Doe*, as here, asserted a "drastically different theory of Title IX liability than was asserted in *Kollaritsch*." *Doe* at 466. In *Kollaritsch*, the defending university "was not on notice of a possible Title IX violation until after the plaintiffs reported these incidents of sexual harassment." *Id.* However, in *Doe*, MNPS was aware of sexual harassment issues in the school system, many of which involved photos or videos, well before the plaintiffs reported their issues. *Id.* The Court in *Doe* states, in pertinent part, "**To hold MNPS is immune from liability as long as no student is assaulted twice, regardless of its indifference to widespread instances of sexual harassment across its schools, would defeat Title IX's purpose of eliminating systemic gender discrimination from federally funded schools**." *Id.* (emphasis added).

Here, Plaintiff has not received the opportunity to conduct discovery on the School or MNPS's past knowledge of sexual harassment through its email system. However, the discovery conducted in *Doe* shows that there *has been* significant photography-based sexual harassment in the MNPS district in the past. *Id.* at 464, 466. As such, it should have been expected that *more* such sexual harassment would occur through a school-given email system. The Court in *Doe*

7

adopted a standard from *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020) for a student alleging, as here, that a school's deliberate indifference *before* she was harassed caused the harassment. *Id.* at 465. Specifically:

> For a Title IX "before" claim, the Ninth Circuit held a student must show: (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Id.* (quoting *Karasek* at 1111–12).

In *Doe*, the plaintiffs met the first requirement of school policy because of the numerous sexual harassment cases reported to MNPS that the plaintiffs found through discovery. Here, although discovery has not yet been conducted, the school district is the same; it follows, then, that MNPS knew of the amount of sexual harassment cases in the district and deliberately did not take action to prevent the same from recurring.

Next, MNPS knew or should have known that an email system between students would lead to sexual harassment; this threat is obvious in any school district, but especially in one where there have already been over 1200 instances of inappropriate sexual behavior. The third prong of the test ("in a context subject to the school's control") is met simply because the School and MNPS have full control over the email system that they provided to their students.

Finally, it is inarguable that a third grader receiving nude photographs and videos and being asked for the same by a first grader is severe, pervasive, and objectively offensive. The trauma caused by this, along with the fear of this recurring given MNPS's failure to implement simple measures to protect its students, caused the Parents to unenroll H.M.T. from the School. H.M.T. was clearly deprived of access to the educational opportunities or benefits provided by the school.

Thereby, *Kollaritsch* does not apply here, and a lack of post-actual-knowledge harassment should not be the basis of dismissal of this matter and effectively holding MNPS immune from liability.

**B. Plaintiff Has Pled Facts to State a Plausible Claim Under 42 U.S.C. § 1983.**

In order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff has alleged that MNPS has violated her equal protection rights, as provided by the Fourteenth Amendment. As to the second element, the United States Supreme Court has held, "if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, that conduct [is] also action under color of state law and will support a suit under §1983 . . . In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is fairly attributable to the State." *See West*, 487 U.S. at 49 (internal quotation marks and citations omitted). Based on the foregoing, MNPS's purported actions (or inactions) were under the color of Tennessee state law.

Defendant, however, argues that a local government can be held liable under § 1983 only where the constitutional violation is caused by its policy or custom. Defendant claims that Plaintiff failed to plead either a constitutional violation or an MNPS custom or practice that caused the violation. Here, Plaintiff has done both. Plaintiff pleaded an equal protection violation, and, by meeting the deliberate indifference standard as discussed above, Plaintiff has fulfilled the requirements Defendant discusses per *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834 (6th Cir. 2016) ("The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is 'substantially the same' as the deliberate indifference standard applied in Title IX cases."). Plaintiff has also proved a custom or policy that caused the violation;

it is MNPS's custom and/or policy to not have simple online protections in place beyond the firewalls that prevent visitation to inappropriate websites. This lack of online safety regulations directly caused harm to H.M.T. because if preventions were in place, such as the aforementioned software that would identify pornographic images in emails, H.M.T. would have never faced such harassment.

## CONCLUSION

A third-grade child was sexually harassed through MNPS servers. The *only* action MNPS took was reporting the Boy who harassed the child to DCS and MNPD and contacting the Boy's parents. By doing so, MNPS entirely failed to acknowledge its own part in the trauma H.M.T. was forced to face. If Defendant's arguments were upheld, it would allow schools to do the most minimal, basic action—have a few courtesy conversations—and not actually fix any issues. As discussed in *Doe*, if MNPS is not called to answer for its inaction, it would set precedence for schools to do the *bare minimum* and leave students vulnerable to attacks. *See Doe* at 466 ("To hold MNPS is immune from liability as long as no student is assaulted twice, regardless of its indifference to widespread instances of sexual harassment across its schools, would defeat Title IX's purpose of eliminating systemic gender discrimination from federally funded schools.").

MNPS's actions show its blatant and deliberate indifference to the safety of its students. MNPS should not be allowed dismissal of this case simply because the Parents proactively unenrolled H.M.T. from the School to prevent *further* harassment and trauma. Thereby, Plaintiff respectfully requests that Defendant's request for dismissal is denied.

Submitted for Entry:

**MCKELLAR LAW GROUP, PLLC**

/s/ Andrea Taylor McKellar
Andrea Taylor McKellar, BPR #019618
Pooja R. Bery, BPR #038652
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9699
Facsimile: 615.866.1278
andie@mckellarlawgroup.com
pooja@mckellarlawgroup.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and accurate copy of the foregoing was served upon the following counsel of record by electronic mail this 22nd day of July 2022:

John Whitaker, BPR #39207
John W. Ayers, BPR #037494
Assistant Metropolitan Attorneys
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, TN 37219
Telephone: 615.862.6341
Facsimile: 615.862.6352
john.whitaker@nashville.gov
will.ayers@nashville.gov

*Counsel for Defendant*

                /s/ Andrea Taylor McKellar
                Andrea Taylor McKellar